UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

MARIO TORRES,

    Petitioner,

v.

SHAWN HATTON,

    Respondent.

Case No. 17-cv-04332-PJH

**ORDER DENYING MOTIONS TO APPOINT COUNSEL AND FOR EVIDENTIARY HEARING; DENYING PETITION FOR A WRIT OF HABEAS CORPUS AND A CERTIFICATE OF APPEALABILITY**

Doc. No. 41

    This is a habeas corpus petition filed *pro se* by a state prisoner pursuant to 28 U.S.C. § 2254. The court ordered respondent to show cause why the writ should not be granted. Respondent filed an answer and lodged exhibits with the court and petitioner filed a traverse. Petitioner also moves for an evidentiary hearing and appointment of counsel. For the reasons set out below, the motions and the petition are denied.

## BACKGROUND

    In 2013, the district attorney filed four complaints against petitioner. On June 3, 2013, petitioner was charged with battery causing serious bodily injury and assault by force likely to produce great bodily injury with a great bodily injury enhancement. ("Case One"). On July 3, 2013, petitioner was charged with several offenses, including two counts of inflicting corporal injury to a spouse or cohabitant and resisting an executive officer. ("Case Two"). On July 17, 2013, petitioner was charged with being under the influence of methamphetamine, a misdemeanor. ("Case Three"). On August 26, 2013, petitioner was charged with possessing a controlled substance and possession of an opium pipe, both misdemeanors. ("Case Four").

    Petitioner went to trial on the charges in Case One, a jury found him guilty and the trial court sentenced him to six years. Petitioner appealed, and the California Court of Appeal reversed and remanded for retrial because the trial court erred in admitting

evidence of uncharged assaults, which was compounded by the erroneous refusal to give a limiting instruction or to limit the scope of the inflammatory evidence the prosecution was permitted to introduce. See People v. Torres, 2014 WL 718473, *1 (Cal. Ct. App. Dec. 17, 2014).

On February 5, 2015, the four cases were resolved pursuant to a plea bargain. In Case One, petitioner pled guilty to assault by force likely to produce great bodily injury and admitted to a great bodily injury enhancement; in Case Two, petitioner pled guilty to two counts of inflicting corporeal injury to a spouse or cohabitant and resisting an executive officer; in Case Three, petitioner pled guilty to being under the influence of methamphetamine. The prosecutor dismissed Case Four and the remaining counts in the other cases. See ECF No. 35-1 at 155-62 (Transcript of plea hearing); ECF No. 1-7 at 13-16 (plea agreement initialed and signed by petitioner). The trial court sentenced petitioner to six years in state prison in Case One and two years and eight months on the other counts, to run concurrent with the six-year term. See ECF No. 35-1 at 162-65 (Transcript of sentencing hearing).

The abstract of judgment erroneously indicated the terms were to be served consecutively instead of concurrently. See ECF 35-1 at 65. On March 5, 2018, the California Department of Corrections and Rehabilitation wrote a letter to the superior court requesting clarification about whether petitioner's sentences were to be served concurrently or consecutively. See ECF No. 35-1 at 12. On April 3, 2018, the superior court repeated its previous error and issued an amended abstract stating the terms were to be served consecutively. ECF No. 35-1 at 6-7, 59. On October 3, 2018, the superior court issued an amended abstract showing the terms were to be served concurrently. See ECF No. 35-1 at 623. Petitioner was released from custody on November 14, 2018. See ECF No. 35-1 at 628.

After his plea was entered, petitioner filed at least four post-conviction petitions in the Contra Costa County Superior Court, six in the California Court of Appeal and five in the California Supreme Court. The only written opinion on the merits is from the Contra

2

Costa County Superior Court. *See In re Mario Torres, on Habeas Corpus*, No. 05-160428-9, May 20, 2016, ECF No. 35-1 at 178-81. The California Court of Appeal and Supreme Court summarily denied his petitions.

On July 31, 2017, petitioner filed his federal habeas petition, which the Court twice denied with leave to amend. On December 15, 2017, petitioner filed an amended petition and a motion for a stay so that he could exhaust his unexhausted claims. The Court granted the motion for a stay, noting the following about cognizable federal claims after the entry of a plea of guilty:

> [A] defendant who pleads guilty cannot later raise in habeas corpus proceedings independent claims relating to the deprivation of constitutional rights that occurred before the plea of guilty. *See Haring v. Prosise*, 462 U.S. 306, 319-20 (1983) (guilty plea forecloses consideration of pre-plea constitutional deprivations); *Tollett v. Henderson*, 411 U.S. 258, 266-67 (1973) (same); *United States v. Jackson*, 697 F.3d 1141, 1144 (9th Cir. 2012) (by pleading guilty defendant waived right to challenge pre-plea violation of Speedy Trial Act).
>
> The only challenges left open in federal habeas corpus after a guilty plea is the voluntary and intelligent character of the plea and the nature of the advice of counsel to plead. *Hill v. Lockhart*, 474 U.S. 52, 56-57 (1985); *Tollett*, 411 U.S. at 267. A defendant who pleads guilty upon the advice of counsel may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the range of competence demanded of attorneys in criminal cases. *Id.*

ECF No. 18.

On February 2, 2018, petitioner filed a habeas petition in the California Supreme Court raising the five grounds for relief presented in his amended petition and its addendum—actual innocence; ineffective assistance of counsel; the plea was not fulfilled; denial of counsel; violations under *Brady v. Maryland*; and illegal sentence. *See* ECF No. 35-1 at 219-39. On May 9, 2018, the California Supreme Court denied the petition citing *In re Clark*, 5 Cal. 4th 750, 767-69 (courts will not entertain successive petitions), and *People v. Duvall*, 9 Cal. 4th 464, 474 (1995) (habeas petition must include copies of reasonably available documentary evidence). *See* ECF No. 21 at 5.

3

1 On July 30, 2018, the Court issued an order lifting the stay and ordered respondent to show cause on four claims: (1) ineffective assistance of counsel with respect to petitioner's plea; (2) violation of the plea agreement; (3) violation under *Brady v. Maryland*, 373 U.S. 83 (1963); and (4) illegal sentence. *See* ECF No. 28. The Court dismissed the claim of actual innocence. *See id.*

## STANDARD OF REVIEW

A district court may not grant a petition challenging a state conviction or sentence on the basis of a claim that was reviewed on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). The first prong applies both to questions of law and to mixed questions of law and fact, *see Williams (Terry) v. Taylor*, 529 U.S. 362, 407-09 (2000), and the second prong applies to decisions based on factual determinations, *see Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

A state court decision is "contrary to" Supreme Court authority, that is, falls under the first clause of § 2254(d)(1), only if "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams (Terry)*, 529 U.S. at 412-13. A state court decision is an "unreasonable application of" Supreme Court authority, falling under the second clause of § 2254(d)(1), if it correctly identifies the governing legal principle from the Supreme Court's decisions but "unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. The federal court on habeas review may not issue the writ "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411. Rather, the application must be "objectively unreasonable" to support granting the writ. *Id.* at 409.

4

Under 28 U.S.C. § 2254(d)(2), a state court decision "based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." *See Miller-El*, 537 U.S. at 340; *see also Torres v. Prunty*, 223 F.3d 1103, 1107 (9th Cir. 2000).

The state court decision to which § 2254(d) applies is the "last reasoned decision" of the state court. *See Ylst v. Nunnemaker*, 501 U.S. 797, 803-04 (1991); *Barker v. Fleming*, 423 F.3d 1085, 1091-92 (9th Cir. 2005). When there is no reasoned opinion from the highest state court to consider the petitioner's claims, the court looks to the last reasoned opinion. *See Nunnemaker* at 801-06; *Shackleford v. Hubbard*, 234 F.3d 1072, 1079 n.2 (9th Cir. 2000). The Court looks to the May 20, 2016 California Superior Court opinion, which is the only opinion to address the merits of the ineffective assistance of counsel claim.

The standard of review under AEDPA is somewhat different where the state court gives no reasoned explanation of its decision on a petitioner's federal claim and there is no reasoned lower court decision on the claim. In such a case, a review of the record is the only means of deciding whether the state court's decision was objectively reasonable. *Himes v. Thompson*, 336 F.3d 848, 853 (9th Cir. 2003). When confronted with such a decision, a federal court should conduct an independent review of the record to determine whether the state court's decision was an objectively unreasonable application of clearly established federal law. *Himes*, 336 F.3d at 853. The three claims that the Court reviews independently are the *Brady* claim and violation of the plea agreement and illegal sentence.

## DISCUSSION

### I. Ineffective Assistance of Counsel

Petitioner argues Christopher Martin,[1] defense counsel representing him for his

---

[1] Petitioner was represented by two different attorneys before Mr. Martin. Petitioner dismissed the previous attorneys for failing to follow his instructions. *See* Amended Petition, ECF No. 31 at 39, (Natalie Saba appointed to represent petitioner in April 2013); ECF No. 31 at 63 (Kira Murray appointed to represent Plaintiff in December 2013); ECF

plea, was ineffective for failing to: (1) investigate claims of Fourth Amendment violations of unreasonable search, excessive force, false arrest and false imprisonment; (2) impeach the prosecution witnesses; (3) investigate the status of petitioner's "missing" *Marsden* hearings; (4) investigate petitioner's reversal and the sham trial leading up to the reversal; (5) produce any discovery; (6) review the discovery with petitioner to give him an understanding of the case filed against him; (7) evaluate the facts. Petitioner also claims he was denied any counsel, that he pled guilty because he was coerced and threatened by counsel and that, but for counsel's errors, he would have rejected the plea offer and gone to trial. Addendum to Petition, ECF No. 26 at 13-15.

**A. Background**

On February 5, 2015, defense counsel and the prosecutor informed the court that the parties had reached an agreement to resolve all of petitioner's four criminal cases. ECF No. 35-1 at 155. The court said, since it was noon, it was best if they took a recess until 1:30 pm. *Id.* The parties agreed. *Id.*

In the afternoon session, the prosecutor explained the agreement as to petitioner's first two cases. The prosecutor explained, and defense counsel agreed, that petitioner was to be sentenced to six years for the first case and two years, eight months for the second case, to be served concurrently. *Id.* at 157-58. The following colloquy took place between the court and petitioner:

> Court: Mr. Torres, I have been handed the Felony Advisement of Rights, Waiver and Plea form; and I'm holding the form up now. Did you have enough time to go over this form with your attorney:
>
> Petitioner: You know, I just wanted to double check the dates. That's all because there was a discrepancy. I just was . . .
>
> Court: No problem. You need some more time to look at the form.
>
> Petitioner: Yes, I would love to.

---

No. 31 at 88 (Christopher Martin appointed to represent petitioner in November 2014).

6

| | | |
|---|---|---|
| 1 | Court: | Well, let me hand them to you. |
| 2 | Petitioner: | Thank you. Thank you. |
| 3 | | . . . |
| 4 | | (Pause in proceedings) |
| 5 | Court: | Okay. Now, Mr. Torres, you had some additional time to look over the Felony Advisement of Rights, Waiver and Plea form, correct? |
| 6 | | |
| 7 | | |
| 8 | Petitioner: | Yes, I have. |
| | Court: | And did you now have enough time to go over this form with your attorney? |
| 9 | | |
| 10 | Petitioner: | Yes. |
| 11 | Court: | Okay. And do you read and understand English? |
| 12 | | |
| 13 | Petitioner: | I do. |
| 14 | Court: | Do you have any questions about anything on the form or the rights that you are giving up? |
| 15 | Petitioner: | No, I do not. |
| 16 | Court: | Are these your initials on the form? |
| 17 | Petitioner: | Yes, they are. |
| 18 | Court: | And for each place, where you placed your initials, do you understand the area where you placed your initials? |
| 19 | | |
| 20 | Petitioner: | I'd say so, yes. I believe I do, yes. |
| 21 | Court: | And is this your signature on the form as well? |
| 22 | Petitioner: | This is correct. Yes ma'am. |
| 23 | Court: | Counsel, is this your signature on the form? |
| 24 | Counsel: | It is, your Honor. |
| 25 | Court: | And do you stipulate that there is a factual basis for the plea? |
| 26 | | |
| 27 | Counsel: | I do. |
| 28 | Court: | Mr. Torres, has anyone promised you anything to get you to plea today? |

| | | |
|---|---|---|
| Petitioner: | No. | |
| Court: | Have you been threatened by anyone to get you to plea today? | |
| Petitioner: | No, ma'am. | |
| Court: | And are you entering your plea freely and voluntarily? | |
| Petitioner: | Yeah. | |
| Court: | Okay. And you understand that, as part of this plea, that you will also be waiving your right to appeal in this matter? | |
| Petitioner: | Yeah. | |
| | [Petitioner pled guilty to the counts outlined above] | |
| Court: | The court finds that the plea has been entered freely and voluntarily and intelligently made with full knowledge of his rights and the consequences of his plea. | |

ECF No. 35-1 at 158-62.

### B. State Court Opinion

The superior court denied the ineffective assistance of counsel claims as follows:

> With respect to the IAC claims, "[a] criminal accused has only two constitutional rights with respect to his legal representation, *and they are mutually exclusive. He may choose to be represented by professional counsel, or he may knowingly and intelligently elect to assume his own representation.* (emphasis in original) (Citations omitted). "An accused who chooses professional representation, rather than self-representation, *has no right to participate as co-counsel.*" (emphasis in original) (Citations omitted).
>
> Petitioner now complains about his professional representation, but the fact remains that he chose professional representation in his numerous open criminal cases leading to his present incarceration following his plea. During that representation, petitioner was not entitled to counsel's files, including the police reports and transcripts from his preliminary hearing. Nor was he legally authorized to conduct either his trial or the plea negotiations as he saw fit: these are matters for his professional counsel. In a word, petitioner was not entitled to second guess the tactics of his attorneys while he was represented by them. Now, under the rubric of IAC, petitioner challenges his professional representations. He contends that he is the target of a vast

8

> conspiracy, encompassing his attorneys, the DA and the court. No evidence supports such a conspiracy. In fact, the court finds such a claim to be completely illusory, including the additional claim that petitioner had made 10 *Marsden* motions and the transcripts for at least eight of them have somehow "disappeared." Finally, no evidence supports petitioner's claim that he was forced to sign a plea agreement after defense counsel "fabricated" a defense.

*In re Mario Torres*, No. 05-160428-9, Cal. Sup. Ct., May 20, 2016, ECF No. 35-1 at 180.

## C. Federal Authority

To prevail on a Sixth Amendment claim for ineffectiveness of counsel, a petitioner must establish two things. First, he must establish that counsel's performance was deficient, i.e., that it fell below an "objective standard of reasonableness" under prevailing professional norms. *Strickland v. Washington*, 466 U.S. 668, 688 (1984). Second, he must establish that he was prejudiced by counsel's deficient performance, i.e., that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A reasonable probability is a probability sufficient to undermine confidence in the outcome of the proceedings. *Id.*

A "doubly" deferential judicial review is appropriate in analyzing ineffective assistance of counsel claims under § 2254. *Cullen v. Pinholster*, 131 S.Ct. 1388, 1410-11 (2011); *Premo v. Moore*, 131 S.Ct. 733, 740 (2011). The general rule of *Strickland*, *i.e.*, to review a defense counsel's effectiveness with great deference, gives the state courts greater leeway in applying that rule, which in turn "translates to a narrower range of decisions that are objectively unreasonable under AEDPA." *Cheney v. Washington*, 614 F.3d 987, 995 (9th Cir. 2010) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). When § 2254(d) applies, "the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Harrington v. Richter*, 131 S.Ct. 770, 788 (2011).

The decision whether or not to accept a plea offer is a critical stage of the prosecution at which the Sixth Amendment right to counsel attaches. *Turner v. Calderon*, 281 F.3d 851, 879 (9th Cir. 2002). Therefore, the two-part test of *Strickland* applies to

counsel's ineffective assistance in advising a defendant to accept or reject a plea offer. *Hill v. Lockhart*, 474 U.S. 52, 57-58 (1985); *Nunes v. Mueller*, 350 F.3d 1045, 1051-53 (9th Cir. 2003). In light of the complexity and uncertainties that attend plea bargaining, it is especially essential that the habeas court respect the latitude for counsel's judgment that *Strickland* requires. *Premo v. Moore,* 562 U.S. 115, 127-28 (2011).

### D. Analysis

#### 1. Failure to Investigate Fourth Amendment Violations

Petitioner claims Martin was ineffective because he failed to investigate alleged Fourth Amendment violations. However, on January 12, 2015, Martin filed a motion to suppress based on a warrantless entry into petitioner's home. *See* ECF No. 35-1 at 123-25. The court denied the motion. *See* ECF No. 35-1 at 81 n.1 (referenced in Martin's motion to sever counts). Therefore, Martin raised the Fourth Amendment violations in a motion which was denied. Martin cannot be said to be ineffective on this basis.

Petitioner fails to identify any witnesses that further investigation would have uncovered, what their testimony would have been and how their testimony would have changed the result of the proceeding. *See Matylinsky v. Budge*, 577 F.3d 1083, 1097-97 (9th Cir. 2009) (denying claim, in part, because petitioner failed to show what additional testimony his "suggested forty-one witnesses would give" to change the outcome of the trial); *Dows v. Wood,* 211 F.3d 480, 486 (9th Cir. 2000) (rejecting claim where petitioner produced no evidence that alleged alibi witness would have provided helpful testimony for the defense).

Furthermore, a claim of failure to interview a witness cannot establish ineffective assistance when the person's account is otherwise fairly known to defense counsel. *Eggleston v. United States*, 798 F.2d 374, 376 (9th Cir. 1986). When the record shows that the lawyer was well-informed, and the defendant fails to state what additional information would be gained by the discovery he now claims was necessary, an ineffective assistance claim fails. *Id.* Petitioner faults Martin for failing to investigate the entry of the police into his house and the ensuing struggle with the police. However,

petitioner was present at this incident and told Martin his version of the events. And, Martin presumably had the police reports and the transcript of the previous trial, so he knew who the witnesses were and what they would say. Martin cannot be faulted for failing to investigate if the facts and witnesses were known to both Martin and petitioner.

Petitioner asked Martin to investigate a video recording of the police beating him at the police station after he was arrested. However, according to petitioner, Martin, in open court, stated he investigated and found that there was no video because the cameras at the police station were broken that day. *See* Amended Petition, ECF No. 31 at 96.

The record shows that Martin was not ineffective for failing to investigate any Fourth Amendment violations.

### 2. Failure to Impeach Prosecution Witnesses

This claim is denied because Martin was not involved in petitioner's trial and, thus, there were no prosecution witnesses to impeach. Petitioner may be attempting to state a claim against his first attorney, who represented him during his trial. However, as discussed above, a claim based on constitutional violations that took place previous to petitioner's guilty plea is not cognizable. *See Haring*, 462 U.S. at 319-20 (1983) (guilty plea forecloses consideration of pre-plea constitutional deprivations).

### 3. Failure to Investigate Missing Transcripts of *Marsden* Hearings

Petitioner claims he received transcripts of only several of his *Marsden* hearings, but the transcripts of many more *Marsden* hearings were not given to him.[2] However, petitioner does not state how the missing *Marsden* hearing transcripts would help in the negotiation of his plea or his claim that his plea was not voluntary or intelligent.

### 4. Failure to Investigate Reversal of Petitioner's Conviction and "Sham" Trial

Petitioner does not explain how Martin's failure to investigate the reversal of petitioner's conviction and his trial would have affected the voluntary and intelligent

---

[2] A defendant who wishes to substitute new counsel for his present counsel may submit a motion under *People v. Marsden*, 2 Cal. 3d 118 (1970).

1 nature of his plea or his decision whether to accept the plea.  Furthermore, petitioner
2 states that he told Martin about "the police brutality he suffered . . . and how [an officer]
3 perjured himself while making his preliminary testimony," and described to Martin "the
4 sham of a trial he was forced to endure and the multiple civil rights violations he has
5 suffered."  Amended Petition; ECF No. 31 at 89.  Petitioner also acknowledges that
6 Martin was "fully aware what happened in that trial." *Id.*  Based on petitioner's own
7 account, Martin would have no need to investigate the trial because he was was fully
8 aware of it.

### 5. Failure to Produce Discovery

Petitioner argues Martin failed to produce discovery, which left petitioner ignorant of the basis of the charges against him.  However, petitioner initialed the following statements in his plea form: (1) he had discussed the contents of police reports and investigative reports with his attorney: (2) he was aware of the evidence against him and possible defenses; and (3) he believed and agreed that a judge or jury who heard the evidence could find him guilty of the charges to which he was pleading guilty.  ECF No. 35-1 at 136 (Plea Agreement).  Petitioner also initialed the statements that the maximum sentence he could receive, if he went to trial, was ten years and eight months and, under the plea agreement, he was to be sentenced to six years.  ECF No. 35-1 at 135.  Furthermore, petitioner was present for the preliminary hearing and trial on Case One.  *See* ECF No 35-1 at 383 (June 25, 2013 Case One Preliminary Hearing Transcript).  Given petitioner's initials on the relevant statements in the plea agreement, his plea colloquy, and his presence at his preliminary hearing and trial, he cannot show that he was unaware of the evidence against him and his possible defenses, particularly in light of his belief and agreement that he could be found guilty of the charges to which he entered the guilty plea.

### 6. Failure to review discovery with petitioner

Petitioner claims Martin failed to review the discovery with him, so he did not understand the charges filed against him.  Like the previous claim, this one is belied by

the record evidence showing petitioner signed the plea agreement attesting to the fact that Martin reviewed the evidence with him, that he understood the claims against him and that he understood he could be sentenced to ten years and eight months, but under the plea agreement he would be sentenced to six years. Furthermore, in his own filings, petitioner states Martin visited him with the discovery to review, but petitioner thought it more important to direct Martin to investigate further. *See* Amended Petition, ECF No. 31 at 90 ("Martin brought plaintiff's discovery with him and Martin wanted to go over some things. Plaintiff informed Martin that going over his discovery was not important at that moment, plaintiff needed some things investigated immediately").

Therefore, the record does not support a claim that Martin failed to review the discovery with petitioner.

### 7. Failure to Evaluate the Facts

Petitioner claims counsel failed to evaluate the facts but does not specify what facts or how this failure was involved in his plea agreement. Furthermore, as discussed above, the record shows Martin brought the discovery to discuss with petitioner and, even though petitioner refused to go over the discovery with Martin at that time, he did go over it with him at a later time.

### 8. Coercion by Counsel

A guilty plea induced by promises or threats which deprive it of the character of a voluntary act is void. *Machibroda v. United States*, 368 U.S. 487, 493 (1962). Agents of the state may not produce a plea by actual or threatened physical harm or by mental coercion overbearing the will of the defendant. *Brady v. United States*, 397 U.S. 742, 750 (1970); *see also Sanchez v. United States*, 50 F.3d 1448, 1454 (9th Cir. 1995) (governmental threats of criminal sanctions against relatives relevant to voluntariness determination). Nor is coercion by a defendant's attorney or other third party acceptable. *See Iaea v. Sunn*, 800 F.2d 861, 866-68 (9th Cir. 1986) (remanded to determine if threat by counsel to withdraw and threat by petitioner's brother to withdraw bail unless petitioner pled guilty rendered plea involuntary).

Petitioner claims "counsel made subtle/blatant threats to petitioner to coerce petitioner to plead guilty as described in paragraphs 576, 578, 634 and 681 of the statement of facts." Addendum to Petition; ECF No. 26 at 14.

In the paragraphs petitioner cites, he alleges: (1) Martin said "if you ever want to go home, you need to take this deal"; (2) Martin said, "Look, Mr. Torres, there is the way the law is supposed to work and the way the law really works and you need to take this deal"; (3) Martin asked petitioner, "How do you plan on fighting your case because you are gonna lose"; and (4) Martin told the judge that petitioner "is going to lose his trial and [Martin] does not want to be held responsible for anything when plaintiff loses his trial." ECF No. 26, ¶¶ 576, 578, 634 and 681.

The cited statements can hardly be characterized as subtle or blatant threats. In these statements, Martin appears to be earnestly trying to persuade petitioner to accept the plea bargain because he feels the evidence against petitioner is so strong, he will lose at a trial. This is not equivalent to the threatened physical or mental harm discussed in the cited cases. Martin's representation was not deficient for encouraging petitioner to accept an offer by the prosecution of a four-year reduction in his sentence in exchange for pleading guilty to some of the charges.

### 9. Denial of Counsel

Petitioner claims he was denied his right to counsel because, "the public defenders appointed to represent petitioner in his defense have denied petitioner discovery (99% of it) pursuant to Contra Costa County policy, working under authority of the State as opposed to being an independent advocate free from State control." Addendum to Habeas, ECF No. 26 at 19.

In this claim, petitioner appears to be challenging the representation he received at trial and during his pre-plea proceedings. As stated above, any claim based upon proceedings that occurred before plea negotiations is not cognizable. This claim is also denied because petitioner's own filings show that Martin visited him many times, took discovery to discuss with petitioner and advised petitioner to take the plea offered by the

14

prosecution because he thought it was in petitioner's best interests to do so.

In short, the state courts' rejection of the ineffective assistance of counsel claims was not contrary to or an unreasonable application of Supreme Court authority or an unreasonable determination of the facts in light of the state court record.

**II. Voluntary and Intelligent Nature of the Plea**

Petitioner claims, based on counsel's ineffectiveness, his plea was not voluntary or intelligent. As discussed above, defense counsel's performance was not ineffective. Therefore, counsel's performance does not support petitioner's claim that his plea was not voluntary or intelligent. Even if Martin's performance was deficient in some regard, petitioner's plea was intelligent and voluntary because the documentary evidence shows that he was informed in court of the rights he was waiving and other consequences of pleading guilty. *See* ECF No. 35-1 at 158-62. He stated in court that no one threatened or promised him anything to agree to the plea and that he was pleading guilty freely and voluntarily. *Id.* Petitioner also stated that he had time to go over the plea form with his attorney and had no questions about it. *Id.* Furthermore, petitioner initialed the plea form where it stated he had gone over the contents of the police and investigative reports with his attorney, he was aware of the evidence against him and his possible defenses, he believed a trier of fact who heard the evidence could find him guilty of the charges, he knew the maximum sentence he could receive if he lost at a trial was ten years and eight months and the plea agreement stated he was to be sentenced to six years. ECF No. 35-1 at 135-36.

Petitioner's statement that he would have gone to trial, but for Martin's ineffective assistance or coercion, is belied by the evidence which shows he was fully informed of the consequences of his plea and establishes that his plea was voluntary, knowing and intelligent. *See Lee v. United States*, 137 S.Ct. 1958, 1967 (2017) ("courts should not upset a plea solely because of post hoc assertions from a defendant about how he would have pleaded but for his attorney's deficiencies; judges should instead look to contemporaneous evidence to substantiate a defendant's expressed preferences"); *see*

15

1  *also Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977)  (transcript of plea hearing plays a
2  significant role in an inquiry into the validity of a plea).

**III. Claim under *Brady v. Maryland***

Petitioner claims numerous violations under *Brady v. Maryland*, 373 U.S. 83 (1963), that he states are discussed in §§ 1-798 of the petition's introduction and statement of facts.  *See* Addendum to Habeas, ECF No. 26 at 22.  As respondent notes, this all-encompassing reference which includes everything from the events leading up to his first arrest to his plea bargain, does not satisfy Rule 2 of the Rules Governing Federal Habeas Following 28 U.S.C. § 2254(c)(2) which requires "the petition to state the facts supporting each ground."

*Brady* establishes that the prosecution violates a defendant's due process rights if it withholds evidence that is material to guilt or to punishment.  *Brady*, 373 U.S. at 87.  To prevail on a *Brady* claim, a petitioner must demonstrate: (1) the evidence at issue is favorable, because it is exculpatory or impeaching; (2) the evidence was suppressed by the State; and (3) prejudice resulted.  *Raley v. Ylst*, 470 F.3d 792, 804 (9th Cir. 2006).  However, under the constitution, the prosecution is not required to disclose all useful material to petitioner.  *See United States v. Ruiz*, 536 U.S. 622, 629 (2002) (there is no general constitutional right to discovery in a criminal case).  In particular, a defendant who is pleading guilty has no right to impeachment information, since that material is related to the fairness of a trial, not to whether a plea is voluntary.  *Id.*  The Constitution does not require a defendant's "complete knowledge of the relevant circumstances, but permits a court to accept a guilty plea, with its accompanying waiver of various constitutional rights, despite various forms of misapprehension under which a defendant might labor."  *Id.*  And, when a defendant is aware of the facts that would allow him to take advantage of exculpatory evidence, the prosecution does not commit a *Brady* violation by not producing the evidence to the defense.  *Raley*, 470 F.3d at 804.

Given the above authority, no *Brady* violations were committed by the prosecution.  The primary evidence petitioner claims was not disclosed to him were videos of his

interaction with the police at his home and at the police station. However, he was a party to both these incidents. Petitioner also claims he was not given videos taken during his proceedings in court, but the court informed him there were no video cameras in the courtroom. *See* ECF No. 31 at 71 (Amended Petition). It is unclear if he also claims impeachment evidence was withheld, but even if he does so, *Brady* is not implicated. *See Ruiz*, 536 U.S. at 629 (defendant who pleads guilty not entitled to impeachment material). Furthermore, petitioner does not meet the requirements of showing a *Brady* violation because he does not specify what favorable evidence was withheld and the resulting prejudice. *See Raley*, 470 F.3d at 804.

This Court has undertaken an independent review of the record and, for the reasons stated above, concludes that petitioner has failed to establish any *Brady* violations.

### IV. Illegal Sentence/Breach of Plea Agreement

These two claims refer to the fact that the original abstract of judgment issued by the superior court showed petitioner's sentences to run consecutively instead of concurrently. However, this appears to be a clerical error rather than something that was intentionally done to breach petitioner's plea agreement. The fact that the abstract of judgment was changed to correctly reflect the two sentences were to run concurrently supports this conclusion. Soon after the correct abstract issued, petitioner was released from custody, showing that neither the court, prosecutor nor the Department of Corrections intended to have petitioner incarcerated longer than the six years stated in his plea agreement.

### V. Evidentiary Hearing

Petitioner requests an evidentiary hearing but does not specify the claims or the evidence he wishes to present to the court. This request is denied because petitioner has not shown he is entitled to an evidentiary hearing. *See Cullen v. Pinholster*, 563 U.S. 170, 183 (2011) (when state court record precludes habeas relief under § 2254(d), district court not required to hold evidentiary hearing).

## VI. Appointment of Counsel

On February 11, 2019, petitioner filed a motion to appoint counsel to represent him in new criminal proceedings. The motion indicates that, after petitioner was released from custody, he was arrested on different charges. However, this Court has no jurisdiction over petitioner's new criminal case. The motion is denied.

## VII. Certificate of Appealability

The federal rules governing habeas cases brought by state prisoners require a district court that denies a habeas petition to grant or deny a certificate of appealability ("COA") in the ruling. *See* Rule 11(a), Rules Governing § 2254 Cases, 28 U.S.C. foll. § 2254 (effective December 1, 2009).

To obtain a COA, a petitioner must make "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Section 2253(c)(3) requires a court granting a COA to indicate which issues satisfy the COA standard. Here, petitioner has made no showing warranting a certificate, and so none is granted.

## CONCLUSION

1. The motion to appoint counsel and the petition for a writ of habeas corpus are **DENIED**. A certificate of appealability is **DENIED**. *See* Rule 11(a) of the Rules Governing Section 2254 Cases.

2. The clerk shall issue a separate judgment and close the file.

**IT IS SO ORDERED.**

Dated: March 8, 2019

_____
PHYLLIS J. HAMILTON
United States District Judge